UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO: 22-76** |
| **TORY DUNCAN** | **SECTION: "H"(1)** |

### ORDER AND REASONS

Before the Court is a Motion to Suppress Evidence by Defendant Tory Duncan (Doc. 26). For the following reasons, this Motion is **DENIED.**

### BACKGROUND

On March 24, 2022, New Orleans Police Department officers received an anonymous tip about a man brandishing a firearm.[1] In response, Officers Slack and Pleasant were dispatched to the St. Thomas Housing Development. Upon arrival, the officers found Duncan carrying a black semi-automatic handgun with an extended magazine in the parking lot. When Duncan saw the officers, he immediately ran and jumped over an adjacent fence. Duncan eventually lost his footing and fell, allowing officers to apprehend him. Duncan was placed under arrest. During the search incident to arrest, the officers seized the firearm, $2,029 in cash, and a key fob for an Infiniti vehicle.[2]

---

[1] The officers involved in this incident are reserve Officer Slack, Officer Li, Officer Nolan, Officer Pleasant, and Sergeant Scott. Officer Slack received the phone call from a concerned citizen, Officers Li and Nolan were the first on the scene, and Officer Pleasant arrived shortly after. Sergeant Scott is their supervising officer.

[2] Doc. 41 at 3.

1

Officer Slack took the key fob and returned to the parking lot where the officers had originally encountered Duncan and then called Officer Pleasant to join him. The officers clicked the "lock" and "unlock" buttons on the key fob, enabling them to locate the car to which it corresponded, a gray Infiniti sedan. The vehicle was running with no occupants, had a stolen Louisiana license plate, an obstructed VIN number, and darkly tinted windows. Officer Pleasant looked through the windshield and saw a plastic bag with a white substance in the cupholder that he believed to be illegal narcotics. The officers then drafted and submitted a search warrant for the car which an Orleans Parish magistrate granted.[3] Upon opening the vehicle, officers observed that a clear plastic bag was sitting in the cupholder. Laboratory testing revealed the substance was fentanyl.[4]

Defendant Tory Duncan was indicted on April 22, 2022, on charges of (1) possession with intent to distribute fentanyl, methamphetamine, and oxycodone; (2) possession of a firearm in furtherance of a drug trafficking crime; and (3) possession of a firearm by a convicted felon.[5] He was arraigned and pleaded not guilty to these charges on June 13, 2022.[6]

Now before the Court is Defendant's Motion to Suppress Evidence. An evidentiary hearing was conducted on December 1, 2022. Defendant requests that the Court suppress the evidence from the search of the gray Infiniti based on three grounds: (1) that the clicking of the fob to locate the car constituted a search for which the officers did not have probable cause, (2) that Officer

---

[3] Doc. 26-6.
[4] Officers seized 78.66 grams of fentanyl, 189.9 grams of pills containing methamphetamine, 16.2 grams of oxycodone, a small amount of marijuana, a digital scale, and razor blades. Doc. 41 at 5.
[5] Doc. 1.
[6] Doc. 13.

2

Pleasant's positioning on the windshield of the car to peer inside was a search for which he did not have probable cause, and (3) that the search warrant contained material misstatements without which the warrant would not have been granted.[7] The Government opposes.[8]

## **LEGAL STANDARD**

"The Fourth Amendment protects the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures,' but 'contains no provision expressly precluding the use of evidence obtained in violation of its commands.'"[9] Nonetheless, Supreme Court precedent has "establish[ed] an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial."[10] "This rule—the exclusionary rule—is a 'prudential doctrine' . . . created by this Court 'to compel respect for the constitutional guaranty.'"[11] The purpose of the exclusionary rule is "to safeguard Fourth Amendment rights . . . through its deterrent effect."[12]

"Generally, on a motion to suppress, the defendant has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of her constitutional rights."[13] When the Government

---

[7] Doc. 26.
[8] Doc. 41.
[9] Herring v. United States, 555 U.S. 135, 139 (2009) (quoting Arizona v. Evans, 514 U.S. 1, 10 (1995)). "It is beyond dispute that a vehicle is an 'effect' as that term is used in the Amendment." United States v. Jones, 565 U.S. 400, 405 (2012) (citing United States v. Chadwick, 433 U.S. 1, 12 (1977)).
[10] *Herring*, 555 U.S. at 139.
[11] Davis v. United States, 554 U.S. 229, 236 (2011) (citations omitted).
[12] United States v. Calandra, 414 U.S. 338, 348 (1974).
[13] United States v. Guerrero–Barajas, 240 F.3d 428, 432 (5th Cir. 2001) (citing United States v. Roch, 5 F.3d 894, 897 (5th Cir. 1993)); *see also* United States v. de la Fuente, 548 F.2d 528, 533 (5th Cir. 1977).

3

performs a warrantless search or seizure, however, the burden shifts to the Government to prove by a preponderance of the evidence that the search or seizure was constitutional.[14]

## LAW AND ANALYSIS

As a preliminary matter, the Court first considers whether Duncan has standing to challenge the search of the vehicle under the Fourth Amendment. To establish standing, a defendant must show that he had a "'legitimate interest of privacy' in the area searched."[15] "A defendant has the burden of establishing his right to contest a search or seizure of a person or property."[16] Duncan must, therefore, show that he had a legitimate interest of privacy in the vehicle.

"One who owns and possesses a car, like one who owns and possesses a house, almost always has a reasonable expectation of privacy in it."[17] The more difficult question is defining "the legitimate expectations of privacy of others."[18] The Supreme Court has explained that this inquiry focuses on the concept of lawful possession, explaining that "no matter the degree of possession and control, the car thief would not have a reasonable expectation of privacy in a stolen car."[19]

---

[14] United States v. McKinnon, 681 F.3d 203, 207 (5th Cir. 2012) (citing *Guerrero–Barajas*, 240 F.3d at 428).
[15] United States v. Antone, 753 F.2d 1301, 1306 (5th Cir. 1985) (citing Rakas v. Illinois, 439 U.S. 128, 143 (1978)).
[16] *Id.* (citing United States v. Salvucci, 448 U.S. 83, 86, (1980)).
[17] Byrd v. United States, 138 S. Ct. 1518, 1528 (2018).
[18] *Id.*
[19] *Id.* at 1529.

The Government argues that Duncan did not lawfully possess the car and therefore, could not have a legitimate interest of privacy.[20] During the suppression hearing, the Government showed that there was mail found in the vehicle addressed to Duncan and that the vehicle was ultimately released to Duncan's family by the police officers, evidencing that Duncan possessed the vehicle. The Government, however, also provided evidence that the vehicle is not titled to Duncan and had a stolen license plate, arguing that these facts in conjunction establish that while Duncan possessed the vehicle, there is nothing to suggest he did so lawfully.[21] Duncan provided no evidence or argument in response. Although the evidence presented regarding the ownership of the vehicle and Duncan's lawful possession is muddled, Duncan failed to carry his burden of showing that he was in lawful possession of the car at the time of the search. The Court therefore finds that the Defendant does not have standing to challenge the search. Assuming arguendo, that Duncan does have standing to contest the search, the Court ultimately finds that there was no Fourth Amendment violation.

Defendant requests that the Court suppress evidence from the search of the car for three reasons: (1) that clicking the key fob to locate the car constituted a search for which the officers did not have probable cause, (2) that Officer Pleasant's positioning on the windshield to peer inside was a search for which he did not have probable cause, and (3) that the search warrant contained material misstatements without which the warrant would not have been granted. The Government responds that neither the use of the key fob nor the positioning on the windshield constituted a search under the Fourth

---

[20] Doc. 41 at 1.
[21] *Id.* at 4.

Amendment, and that the mistake of fact within the warrant was immaterial and innocuous.

i. *Whether Using the Key Fob to Identify the Infiniti was a Search Subject to Fourth Amendment Protections*

Duncan first asserts that the use of the key fob constituted a search under the Fourth Amendment. To ascertain whether a Fourth Amendment violation occurred, the Court must first decide whether there was a search within the meaning of the Fourth Amendment and second, whether that search was reasonable.[22] In *United States v. Richmond,* the Fifth Circuit confirmed two separate approaches to determining whether the government's conduct is a search within the meaning of the Fourth Amendment, the *Jones* common law trespassory test and the *Katz* reasonable expectation of privacy test.[23] The common law trespassory test requires that "a trespass 'must be conjoined' with 'an attempt to find something or obtain information.'"[24] Mere physical touching is not enough, it must be "physically occup[ying] private property for the purpose of obtaining information."[25]

The second approach, the *Katz* "reasonable expectation of privacy" test, first asks whether "the individual, by his conduct, has exhibited an actual expectation of privacy; that is, whether he has shown that 'he [sought] to preserve [something] as private.'"[26]

---

[22] United States v. Rodriguez, 33 F.4th 807, 812 (5th Cir. 2022).
[23] United States v. Richmond, 915 F.3d 352, 357 (5th Cir. 2019).
[24] *Id.* (citing *Jones*, 565 U.S. at 408 n.5).
[25] *Jones*, 565 U.S. at 404.
[26] Bond v. United States, 529 U.S. 334, 338 (2000) (citing Smith v. Maryland, 442 U.S. 735, 740 (1979)).

Second, the court must determine whether "the individual's expectation of privacy is 'one that society is prepared to recognize as reasonable.'"[27] The two tests work together, as "property concepts" are useful in "determining the presence of absence of the privacy interests protected by [the Fourth] Amendment."[28]

Duncan argues that Officers Pleasant and Slack's use of the key fob to identify the vehicle constituted a search under the common law trespassory test. Duncan's brief does not, however, address whether the conduct amounted to a search under the *Katz* test. In *Jones,* the Supreme Court addressed concerns that the adoption of the common law trespassory test would present "'particularly vexing problems' in cases that do not involve physical contact, such as those that involve the transmission of electronic signals," by stating that "situations involving merely the transmission of electronic signals without trespass would *remain* subject to *Katz* analysis."[29] Because this appears to be the type of "particularly vexing problem" the Supreme Court was referring to, the Court finds that regardless of whether Duncan raised the issue, it must decide whether there was a search under both the *Katz* reasonable expectation of privacy test and the common law trespassory test. The Court holds that under these circumstances, when the police apprehend a fleeing defendant with a gun, a substantial amount of cash, and a key fob in his pocket, that the use of the key fob to identify the vehicle to which it corresponds is not a search under either test.

The *Katz* test first asks whether the defendant had a reasonable expectation of privacy in the area searched.[30] In *Katz,* the Court explained that

---

[27] *Id.*
[28] Byrd v. United States, 138 S. Ct. 1518, 1526 (2018).
[29] *Jones,* 565 U.S. at 411.
[30] *Katz*, 389 U.S. at 360–61 (Harlan, J., concurring).

"'[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection."[31] The Supreme Court has also stated that an individual has a diminished expectation of privacy in vehicles since cars regularly travel on public roads in plain view of others.[32] In this case, the officers returned to where they had first apprehended Duncan, and clicked the key fob in order to identify the vehicle tied to it.[33] The officers did not use the key fob to gain entry to the car or to view any concealed portion of the car. The clicking of the key fob merely revealed the identity of the vehicle and its location in the parking lot, information which is not private.[34] When cars are driven and parked on the street or in parking lots their locations are readily apparent to any passersby. The clicking of the key fob only allowed the officers "to make additional plain view observations from [their] lawful vantage point."[35] While the Fifth Circuit has not addressed this narrow issue, various other courts have held that the act of using a key fob validly seized from a

---

[31] *Id.* at 351.
[32] Cardell v. Lewis, 417 U.S. 583, 590 (2974).
[33] Wiley v. State, 388 S.W.3d 807, 819 (Tex. App. 2012) (holding that since the defendant's "vehicle was parked on a public street . . . he had no reasonable expectation of privacy in the identify of his car."); State v. Bland, 2013 WL 5755670 (Del. Super. Ct. Oct. 1, 2013) (distinguishing an instance where an officer simply pressed a key fob causing lights on a nearby Cadillac to flash from other instances where officers walked around trying to match the key fob to a vehicle in holding that the use of the key fob to identify a vehicle was not a search within the meaning of the Fourth Amendment").
[34] The Eighth Circuit in *United States v. Cowan* held that the defendant "did not have a reasonable expectation of privacy in the identity of his car." 674 F.3d 947, 955 (8th Cir. 2012). The court went on to say that "[i]f [the defendant's] car were in Chicago or otherwise not present, the fob would have disclosed nothing. If the keys and car belonged to someone else and [the defendant] had no possessory interest in the vehicle, [the defendant] had no expectation of privacy in the vehicle. If the keys belonged to a car in the apartment's associated parking area, the fob merely would identify the vehicle." *Id.* at 955. The Seventh Circuit in *United States v. Correa* held that the officer's repeated use of a garage door opener to determine which garage it corresponded to was a reasonable search since the "searches produced only an address, not any meaningful private information about the interior or contents of the garage. [The defendant] had no reasonable expectation in that information." 908 F.3d 208, 219 (7th Cir. 2018).
[35] Commonwealth v. Harvard, 64 A.3d 690, 696 (Pa. Super. Ct. 2013).

8

suspect to determine the identity of a vehicle in a public area does not violate a reasonable expectation of privacy, and thus, does not constitute a violation of the Fourth Amendment under *Katz*.[36]

The Supreme Court in *Jones*, however, was clear that "Fourth Amendment rights do not rise or fall with the *Katz* formulation."[37] The Court must now determine whether the officers conduct in pushing the buttons of the key fob constituted a search under the common law trespassory test. While the Supreme Court in *Jones* signaled that cases with digital transmission do not involve a trespass, Duncan argues that this conduct goes beyond the transmission of electronic signals since the "[t]he officers physically manipulated the vehicle's locking mechanism, causing the vehicle's locks to engage and disengage."[38] The Court disagrees with this characterization, and finds that there was no trespass, and therefore, no violation of the Fourth Amendment.

In *Richmond,* the Fifth Circuit held that the "relatively minor" act of "tapping tires" during a traffic stop was a trespass which "occurred to learn what was inside the tire," and thus, qualified as a search.[39] Duncan attempts to analogize the tire tap from *Richmond* to the act of pushing the "lock" and "unlock" buttons on the key fob. This analogy, however, disregards the fact that *Richmond's* focus was a *physical* intrusion.[40] Officers Pleasant and Slack did not use the key fob to gain entry to the interior of the vehicle or to physically

---

[36] *Wiley,* 388 S.W.3d 807; *Bland,* 2013 WL 5755670; *Harvard,* 64 A.3d 690; *Cowan,* 674 F.3d 947; *Correa,* 908 F.3d 208.
[37] *Jones,* 565 U.S. at 406.
[38] *Id.* at 400, 411 (stating that there may be issues in cases "that do not involve physical contact, such as those that involve the transmission of electronic signals"); Doc. 26-1 at 12.
[39] *Richmond,* 915 F.3d at 358.
[40] *Id.* at 357 (citing *Jones,* 565 U.S. at 404 (describing the common law trespassory test as determining whether the government "physically occupied private property for the purpose of obtaining information")).

9

intrude upon the car in any way.[41] The officers did not physically manipulate the vehicle's locking mechanism, nor did they even touch it. The act of sending electronic signals to the car from the key fob is not a physical intrusion. Although the officers did physically touch the key fob, it had been validly seized.[42] Under these circumstances, the use of the validly seized key fob to identify the vehicle in the parking lot was not a trespass. As such, the use of the key fob to identify the Infiniti was not a violation of the Fourth Amendment.

ii. *Whether Officer Pleasant Searched the Car by Leaning on the Windshield*

Duncan also argues that Officer Pleasant "positioned himself with his arms and torso on the vehicle so that he could stretch to closely took through the darkly tinted windshield."[43] The Government responds that "leaning over the windshield is a minimal intrusion that lasted mere seconds," and which did not amount to an unreasonable search under the Fourth Amendment.[44] The Court holds that while the physical positioning of Officer Pleasant to look through the windshield constituted a trespass under *Richmond,* that this invasion was justified and does not rise to the level of a Fourth Amendment violation.

In order to constitute a search, "a trespass 'must be conjoined' with 'an attempt to find something or obtain information.'"[45] The court in *Richmond* stated that this test "prevents a mere physical touching, such as when an

---

[41] United States v. Burgess, 425 F. Supp. 423, 416 (E.D. Pa. 2019) (holding that the use of a key fob to identify and locate a vehicle was not a search subject to the Fourth Amendment's protections under the common law trespassory test).
[42] *Cowan,* 674 F.3d at 956 (holding that "[t]here is no trespass when the Government comes into physical contact with or possession of an item when the Government is authorized to do so, and the mere transmission of electric signals alone is not a trespass").
[43] Doc. 26-1 at 13.
[44] Doc. 41 at 10–11.
[45] *Richmond,* 915 F.3d at 357 (citing *Jones,* 565 U.S. 408 n.5).

officer leans on the door of a car while questioning its driver, from being a search."[46] The Court finds that Officer Pleasant leaning on the windshield to peer into the car exceeded mere touching. Officer Pleasant positioned himself on the windshield to get a better view of what was inside the car and to attempt to determine the VIN number. He was touching the car and the windshield to obtain more information about the car and its contents. The Government argues that this is distinguishable from *Richmond* because the officer only obtained "the same information he would have been able to acquire if he had grabbed a step-stool and leaned over" the car.[47] This is immaterial because Officer Pleasant did not grab a step stool to lean over the car, and rather leaned against the car to peer through the windshield in order to gather more information about what was inside.[48] This situation is analogous to *Richmond,* and the Court finds that Officer Pleasant's conduct constituted a trespass. This is, however, only the first step of the inquiry.

"The ultimate question is whether the government's conduct was reasonable."[49] In this analysis, "the extent of the intrusion on an individual's Fourth Amendment interests is relevant."[50] The Court holds that while touching the car and leaning on the windshield constituted a trespass, ultimately, Officer Pleasant's conduct did not violate the Fourth Amendment because it was supported by probable cause.[51] Duncan had just been arrested

---

[46] *Id.*

[47] Doc. 41 at 10.

[48] In *Richmond,* the court held that under the common law trespassory test, the tapping of the tire "was a search regardless of how insignificant it might seem." 915 F.3d at 358. The court reiterated that "*Jones* held that a trespass search implicates the Fourth Amendment even if it does not offend privacy interests." *Id.* at 359.

[49] *Id.*

[50] *Id.*

[51] Maryland v. Dyson, 527 U.S. 465, 467 (1999) ("If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment ... permits police to search the vehicle without more.").

11

fleeing the parking with a handgun and over $2,000 in cash. The officers then determined that the key fob found in Duncan's pocket corresponded to a running car with tinted windows, a stolen Louisiana license plate, and an obstructed VIN number. The Court finds that the totality of the circumstances in this case clearly present sufficient probable cause to believe that there was contraband in the car, permitting police to engage in a minimally invasive search of the vehicle.[52] Thus, this Court finds that Officer Pleasant's conduct does not amount to Fourth Amendment violation.

iii. *Was the Warrant Tainted by a Willful and Material Misstatement*

Finally, Duncan argues he was entitled to a *Franks* hearing on the veracity of the warrant affidavit because he presented "a sufficient preliminary showing that the affiant officer obtained the warrant by recklessly including material falsehoods in a warrant application."[53] The Court granted this request and held a hearing on December 1, 2022, at which Officer Pleasant and Sergeant Scott testified.[54]

Duncan alleges there were two material misstatements included in the warrant application. The Government admitted at the hearing that there was one singular misstatement in the warrant application, but argues it was innocuous and immaterial. This first misstatement is Officer Pleasant's allegation that "upon arrival the officers observed Duncan in the described attire standing next to a dark gray infiniti G35."[55] The body and dash camera footage from the incident shows this assertion to be false, and the Government

---

[52] *Id.*
[53] Doc. 26-1 (quoting Melton v. Phillips, 875 F.3d 256, 262 (5th Cir. 2017) Under *Franks,* a defendant is entitled to a "hearing on the veracity of a warrant affidavit if he can make a sufficient preliminary showing that the affiant officer obtained the warrant by recklessly including material falsehoods in a warrant application." *Melton,* 875 F.3d at 262.
[54] Doc. 45.
[55] Doc. 26-6 at 2.

does not dispute that Duncan was approximately 100 feet away at the time the officers arrived.

Based on the hearing, the Court finds that this false statement was not recklessly or deliberately included in the warrant. Both Officer Pleasant and Sergeant Scott explained how the affidavit was drafted and the circumstances they were under when they arrived at the scene. Within moments of driving into the parking lot, Officer Pleasant began chasing a fleeing suspect with a handgun. Later, when Officer Pleasant began drafting the warrant application, he stated that at the time, he legitimately believed Duncan was standing next to the vehicle and that was why he included the assertion in his affidavit. The Court found his testimony to be reliable, and the misstatement to be innocent in light of the dangerous and stressful situation.

Furthermore, the Court finds that this misstatement was not essential to the warrant application and the finding of probable cause. The key fob validly connected Duncan to the vehicle, which was running with tinted windows, a stolen license plate, and an obstructed VIN number. Since the Court found that the use of the key fob to connect Duncan to the vehicle did not violate the Fourth Amendment, the Court now holds that the inclusion of the misstatement that Duncan was near the vehicle in the warrant application was unnecessary to the finding of probable cause.

Duncan also alleges there is another "dubious" allegation in the affidavit: that Officer Pleasant could see through the tint on the windshield to see a bag with white powder in the cupholder. In the process of drafting the warrant application, Officer Pleasant told his supervisor that he could see a bag with white powder and she asked whether he had x-ray vision.[56] While Duncan urges the Court to view Sergeant Scott's questioning as her having doubt in

---

[56] Doc. 26-1 at 16.

13

Officer Pleasant's ability to see through the windshield, the Court finds that Sergeant Scott was behaving as an effective and prudent supervisor. Sergeant Scott was questioning the officers under her command to ensure that it was a truthful assertion before Officer Pleasant submitted the warrant application. Based on the testimony of Sergeant Scott and Officer Pleasant at the hearing, the Court finds the mistake in the affidavit to be innocuous, immaterial, and the officers to be truthful. Thus, the Court must deny Duncan's Motion on all grounds.

## CONCLUSION

Based on the foregoing, Defendant's Motion to Suppress Evidence is **DENIED.**

New Orleans, Louisiana this 8th day of March, 2023.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**